## STELL et al. v. FITCH. (No. 7026.)*

(Court of Civil Appeals of Texas. San Antonio. Nov. 28, 1923. Rehearing Denied Dec. 20, 1923.)

1. **Appeal and error** &#x21DC;978(3)—**Statements and arguments of jurors held not ground for reversal.**

Arguments and statements by jurors during their deliberation as to the evil effect of a finding for plaintiff *held* not ground for reversal of a judgment on a verdict for defendant, in view of jurors' testimony, from which the court, in the exercise of its discretion, could reasonably conclude that they were not influenced thereby, and the absence of testimony warranting any other verdict.

2. **Appeal and error** &#x21DC;1032(1)—**Misconduct of jurors held not ground for reversal in absence of evidence warranting contrary finding.**

In the absence of evidence to support an affirmative answer to a specific question embraced in an issue submitted, improper statements and arguments by jurors during their deliberation *held* not to warrant reversal of a judgment on a finding answering the entire issue in the negative.

Appeal from District Court, Cameron County; W. B. Hopkins, Judge.

Action by R. L. Stell and others against H. L. Fitch. Judgment for defendant, and plaintiffs appeal. Affirmed.

Seabury, George & Taylor, of Brownsville, for appellants.

James B. Wells, Joseph K. Wells and R. A. Hightower, all of Brownsville, for appellee.

SMITH, J. For the purposes of this opinion the statement made by appellant of the nature and result of the suit is deemed sufficient:

"For many years, probably some 50 years prior to the matters in controversy in this suit, the New York & Brownsville Improvement Company, Limited, owned a great majority of the plotted lots constituting the city of Brownsville, as well as the acreage property surrounding the city of Brownsville. The said New York & Brownsville Improvement Company, Limited, for many years had a local agent in Brownsville, who rendered for taxes, and otherwise looked after this vast amount of property. This agent was Hon. E. C. Forto, who died about the time the matters arose out of which this suit has grown.

"One of the plaintiffs in this case, R. L. Stell, conceived the idea of buying this property in the spring of 1921, and took the matter up with Judge E. C. Forto, had some interviews with him, and after his death took the matter up again with another agent of said company. Mr. Stell, being unable to handle the properties alone, invited the defendant in this case, H. L. Fitch, to go into the deal with him, and, after much discussion and negotiations, the proper-

ty was finally purchased for their benefit, but in the name of the defendant, H. L. Fitch, from the New York & Brownsville Improvement Company, Limited, for approximately $325,-000, with only a small cash payment. This property was known as the Stillman property, and is so referred to throughout the suit.

"When Fitch bought the property and finally got a deed to it, it was understood at that time, and prior thereto, that Stell, one of the plaintiffs herein, and E. S. Brodix were to be interested in the profits arising out of the deal, and it was also agreed from time to time, according to the claim of Stell that as soon as the deal was consummated and Fitch got the deed to all the property, Stell, who was a land agent, should have the exclusive sale of the property. Shortly after the deed was made to Fitch, and on or about the ———— day of September, 1921, one of the plaintiffs, Stell, approached the defendant Fitch, and told him (Fitch) that he (Stell) wished to take in two other parties to aid him in selling the property in question. These parties were the other plaintiffs, E. A. Monsees and S. C. Osborne. Upon the mentioning of this matter to Fitch, he and Stell went to the office of Monsees and Osborne, and there, according to claim of plaintiffs, entered into an agreement by which it was agreed that Stell, Monsees, and Osborne should have the exclusive agency for the sale of the entire Stillman properties then held in the name of Fitch, and that for their services in selling this property they should have 5 per cent. commission on the sales price, to be deducted out of the first payment, except as to two or three pieces of property for which the commission should be 2½ per cent.

"Immediately after this contract was entered into, Stell, Monsees, and Osborne entered upon the discharge of their duties, and began to sell these properties. In a short time, however, a controversy arose between them and defendant Fitch, and he notified them to stop selling, and refused continually thereafter to permit them to carry out their arrangement to sell the property. Whereupon Stell, Monsees, and Osborne on the 25th day of November, 1921, instituted this suit for the commissions earned by them up to the time they were discharged, and for the commissions on all sales made by Fitch himself from the time they were discharged until the suit was instituted, and up to the time of the trial, and further for commissions that they would have earned had they been permitted to go on with the contract above mentioned, and for damages, etc. The contract in its entirety was verbal.

"The case went to trial on the 24th day of January, 1923, before a jury, and was submitted to said jury on special issues. The first issue, however, that was submitted to the jury was whether the plaintiffs had ever made a contract with Fitch for commissions. The question was as follows:

"Question No. 1: 'Did the defendant H. L. Fitch at or about the time alleged in plaintiff's petition, and soon after August 22, 1921, make and enter into a verbal agreement with the plaintiffs herein, R. L. Stell, E. A. Monsees, and S. C. Osborne, whereby he constituted them his exclusive agents to sell what is commonly known as the Stillman properties situat-

---

&#x21DC;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction January 23, 1924.

ed in and near Brownsville and the various parcels thereof, the defendant to fix the prices and terms of sale of said property, and to pay the plaintiffs a 5 per cent. commission out of the first payment on the sales price of said property, whether sold by plaintiffs or defendant, with the exception of the property sold to the Brownsville independent school district for the junior high school site, and a 2½ per cent. commission on the sale price of this piece of property as alleged in plaintiffs' petition'?

"To this question the jury answered, 'No,' and the jury was instructed, if they answered the question 'No' they should not consider the case further, the answers to the other questions being immaterial if they answered the first question 'No.'

"On this finding of the jury, the court entered a judgment for the defendant Fitch that he go hence without day, and that the plaintiffs take nothing."

The appeal is predicated upon two contentions: First, that the answer of the jury to the special issue No. 1 is contrary to the great preponderance of the evidence; and second, that the jury was guilty of such misconduct in reaching a verdict as to require reversal.

We. overrule the first contention, and appellants' fourth assignment of error, challenging the sufficiency of the evidence to support the finding of the jury negativing the issue submitted to them. We think the evidence was quite sufficient. This contention will be further discussed in disposing of the other question raised.

With reference to the matter of the alleged misconduct of the jury, it appears that, upon the first ballot taken just after the jury retired, and upon two or three succeeding ballots, the vote stood seven for "No," and five for "Yes," as an answer to special issue No. 1, which is set out above. In the discussions which followed some of the jurors advanced the argument that, if Fitch made and was bound by the agreement described in said special issue, it would have the effect of rendering him liable to appellants for 5 per cent. commission, not only upon the sales previously made, but upon sales thereafter and by whomsoever made, as well; that this would amount to $45,000, $50,000, or $100,000, which Fitch would have to pay appellants, and that this would result in "breaking" Fitch; that if this was the contract, and it was enforced, it would keep the property off the market, and greatly retard the development of the City of Brownsville. These arguments and statements were repeatedly made during the somewhat extended deliberations of the jury, which finally voted unanimously to answer "No" to the special issue.

[1] We have very carefully considered and analyzed the evidence concerning the conduct of the jury, and have concluded that it is not shown that the court below abused its rather wide discretion in overruling the motion for new trial. The arguments and statements mentioned were made by the jurors while considering the meaning and effect of the word "exclusive" as used in the special issue. The argument advanced was that the word as there used meant that Fitch was obligated to pay appellants a full 5 per cent. commission on all the property sold, whether the sales should be made by appellants or Fitch or any other persons; and the effect of such a contract upon Fitch and the city of Brownsville was discussed by the jurors in determining whether or not Fitch intended to or did make such a far-reaching agreement. We are not required to decide whether or not such arguments or statements could properly be considered by the jury in determining the nature or extent of the agreement made by the parties, for the reason that the testimony of the jurors was such that the trial court could reasonably conclude therefrom that the statements and arguments complained of did not induce the jury to answer the special issue in the negative. When this testimony of the jurors is carefully analyzed, it easily warrants the conclusion that, regardless of the argument and statements complained of, the jury would not in any event have answered the issue otherwise than in the negative.

[2] Moreover, appellant has not called our attention to testimony which would fully warrant the jury in returning other than a negative answer to the special issue. For instance, the issue as submitted embraces the specific question: Did Fitch agree to pay appellants "a 5 per cent. commission out of the first payment on the sales price of said property?" We have carefully examined all the testimony set out in the briefs of the parties, and find none that would warrant an affirmative answer to this question. It may be true that this is but one of several specific questions going to make up the ultimate issue submitted, but it is a distinct question, and, in the absence of any evidence to support it, it is presumed that the jury would return a negative answer to the whole, since they had no authority to segregate the questions and answer them separately. For the several reasons set out, we overrule appellants' first, second, and third assignments of error.

The judgment is affirmed.